## POLK COUNTY STATE BANK OF CROOKSTON v. M. W. WALTERS.[1]

February 13, 1920.

No. 21,621.

**Promissory note not negotiable.**

   1. Prior to the Negotiable Instrument Act of 1913 a note for merchandise providing that title should remain in the vendor; that it should vest in the vendee upon payment; that in case of default, or an attempt to sell or remove the property, all payments should be forfeited, and that possession should be given the vendor, was not negotiable, the promise to pay not being an unconditional promise such as is essential to negotiability.

**Not negotiable under Negotiable Instrument Act.**

   2. The provision of section 3 of the Negotiable Instrument Act, Laws 1913, c. 272, § 3, G. S. 1913, § 5815, that a promise shall not be condi-

[1]Reported in 176 N. W. 496.

tional because coupled with "a statement of the transaction which gives rise to the instrument," does not make such a note negotiable.

Action in the district court for Polk county to recover $315 upon a promissory note. The case was tried before Watts, J., who made findings and dismissed the action. From an order denying its motion to amend the conclusions of law or for a new trial, plaintiff appealed. Affirmed.

*F. A. Grady,* for appellant.
*Martin O'Brien,* for respondent.

DIBELL, J.

Action by the plaintiff on a promissory note executed by the defendant Walters to the National Supply Company and by the latter indorsed to the plaintiff before maturity. The making and indorsement were admitted. The court found that the defendant had a defense against the payee; that the plaintiff purchased in good faith; that the note was not negotiable, and that the plaintiff could not recover. The plaintiff appeals from the order denying his motion for a new trial.

1. The note stated that the consideration was the sale of a player piano; that the instrument was to remain the property of the vendor, the payee; that title should vest in the defendant upon payment; that in case of default, or an attempt to sell or remove the instrument, all payments should be forfeited, and that possession should be given the vendor.

Under the law of this state, as it was before the Negotiable Instrument Act of 1913, the note was not negotiable. Third National Bank of Syracuse v. Armstrong, 25 Minn. 530; Stevens v. Johnson, 28 Minn. 172, 9 N. W. 677; Deering v. Thom, 29 Minn. 120, 12 N. W. 350; Edwards v. Ramsey, 30 Minn. 91, 14 N. W. 272. The promise, within our holdings, was not unconditional. This is not the holding everywhere, and perhaps not the prevailing doctrine, though the difference in the phraseology of such notes gave rise to distinctions, sometimes uncertain or confusing, when one rule or the other is sought to be applied.

2. The only question, as frankly conceded by counsel for the plaintiff, is whether under the Negotiable Instrument Act the note is negotiable; that is, whether the act changes the former doctrine.

Section 1 of the act requires the promise to pay to be unconditional; and section 3 is as follows:

"An unqualified order or promise to pay is unconditional within the meaning of this act though coupled with: (1) An indication of a particular fund out of which reimbursement is to be made, or a particular account to be debited with the amount; or (2) a statement of the transaction which gives rise to the instrument. But an order or promise to pay out of a particular fund is not unconditional." Laws 1913, p. 374, c. 272, § 3; G. S. 1913, § 5815.

The precise question is whether the words of the note coupled with the promise constitute "a statement of the transaction which gives rise to the instrument," within the meaning of the statute, and therefore by force of the statute the promise is unconditional, though before it under our decisions it was conditional. Our view is that the statute does not have the effect suggested. Some courts hold, under conditional sale contracts of one kind or another, that it has. Welch v. Owenby (Okl.) 175 Pac. 746; Citizens' Nat. Bank v. Bucheit, 14 Ala. App. 511, 71 South. 82; Ex parte Bledsoe, 180 Ala. 586, 61 South. 813. And see Choate v. Stevens, 116 Mich. 28, 74 N. W. 289, 43 L.R.A. 277. Others, under varying contracts, hold that it has not. Kimpton v. Studebaker Bros. Co. 14 Idaho, 552, 94 Pac. 1039, 125 Am. St. 185, 14 Ann. Cas. 1126; Reynolds v. Vint, 73 Ore. 528, 144 Pac. 526; Fleming v. Sherwood, 24 N. D. 144, 139 N. W. 101, 43 L.R.A.(N.S.) 945. And see Worden Grocer Co. v. Blanding, 161 Mich. 254, 126 N. W. 212, 20 Ann. Cas. 1332.

It is to be noted that differences in the wording of the contracts have given rise to distinctions and perhaps some confusion just as before the statute. A discussion of section 3 and a reference to cases arising under it is found in Brannan, Neg. Inst. Law, p. 15; Crawford, Neg. Inst. Law, p. 16; Ogden, Neg. Inst. p. 271.

The result would not justify the time nor the space necessary to a full citation or a critical discussion of the cases involving like or similar notes. The construction placed by different courts on section 3 indicates that the Negotiable Instrument Act fails of uniformity in the class of cases before us. If the courts were holding with substantial uniformity that section 3 has the effect claimed for it, we ought so much as possible to conform our views to theirs in aid of general uniformity. Such is

not the situation. The doctrine so long prevailing with us has worked satisfactorily. To some extent it has been a protection to those who supposed that they were signing a contract of purchase and not a negotiable note. Bankers purchasing such instruments have not supposed they were getting negotiable notes. If the legislature had intended so radical a departure from the settled doctrine of the state it would, we think, have used language more definitely expressive of its purpose.

Order affirmed.